# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:15CV138-RJC-DSC

| | |
|---|---|
| ANGELA M. NICKE, )<br>       Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social )<br>Security Administration, )<br>       Defendant. )<br>_____) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #12) and Defendant's "Motion for Summary Judgment" (document #14), as well as the parties' briefs and submissions.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

In August 2010, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging that she became disabled on September 12, 2007. (Tr. 14–15, 294, 301). The applications were denied initially and upon reconsideration. (Tr. 15, 176, 183, 187). Plaintiff requested a hearing which was held on April 4, 2012. (Tr. 37-66).

1

The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications. The Appeals Council subsequently remanded the matter to the ALJ for a second hearing which was held on December 9, 2013.

On February 19, 2014, the ALJ determined that Plaintiff was not disabled. (Tr. 11-34). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 16). The ALJ also found that Plaintiff suffered from degenerative-disc disease, degenerative-joint disease, fibromyalgia, and obesity (Tr. 20, 27), but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 20). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform light work[2] "not requiring climbing of ladders, ropes or scaffolds, and requiring only occasional climbing of ramps or stairs, stooping, kneeling, crouching or crawling." (Tr. 24, 27).

The ALJ found that Plaintiff could perform her past relevant work as an insurance accounts clerk. (Tr. 25, 27). The ALJ made this determination based in part on the testimony of a Vocational Expert ("V.E.") who stated that Plaintiff's insurance accounts clerk job was sedentary, semi-skilled work. (Tr. 25, 104).

Nevertheless, the ALJ then shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could also perform. In response to a hypothetical that factored in the above limitations, the V.E. identified unskilled light jobs as a parking lot cashier

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

2

and storage facility rental clerk. The V.E. testified that more than 13,000 of those jobs were available locally and more than 500,000 were available nationally. (Tr. 26). The ALJ concluded that the V.E.'s testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Id.

Based upon this testimony, the ALJ found that there were a significant number of jobs in the local and national economy that Plaintiff could perform. (Tr. 26-28). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Id.

On September 9, 2015, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-4).

Plaintiff filed the present action on November 10, 2015. She assigns error to the ALJ's evaluations of medical records and opinions by Doctors Michelle Coleman, Mark Goodson, and Binit Shah. Plaintiff's Brief at 4-7 (document #13). She also contends that the ALJ's non-disability finding is not supported by substantial evidence. Id.

The parties' Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

3

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled[3] as that term of art is

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

defined for Social Security purposes. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish her RFC by demonstrating how those impairments impact her functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). The ALJ's RFC determination here and his ultimate determination that Plaintiff is not disabled are supported by substantial evidence.

Plaintiff argues that substantial evidence does not support the ALJ's RFC finding because (1) the ALJ improperly relied on Dr. Edward Campbell's notations that Plaintiff was "feeling well"; (2) she saw Dr. Campbell regularly; (3) she saw orthopedists, a cardiologist, a neurologist, an oncologist, and a rheumatologist and was a patient at two pain-management clinics where she was treated with injections and narcotics; and (4) "there is evidence tantamount to the opinion of a treating physician, which was ignored while inconsequential comments are cited in support of the ALJ's findings." Plaintiff's Brief at 4–5 (document #13).

The ALJ thoroughly discussed the medical evidence here. (Tr. 15-24). The ALJ noted that in July 2009, Dr. Campbell found that Plaintiff was feeling well in general, and a physical examination was essentially normal. (Tr. 15, 485–87). In August 2010, Dr. Kutner, an orthopedist,

5

opined that Plaintiff was "really doing too well to consider" referral to a pain clinic at that time (Tr. 16, 22, 507). In February 2011, Dr. Wood, an orthopedist, opined that Plaintiff's degenerative-disc disease was mild and recommended that Plaintiff lose weight and stop smoking (Tr. 17, 21, 777–78). In August 2011, Dr. Campbell noted again that Plaintiff was feeling well in general, and a physical examination was essentially normal (Tr. 16, 837, 840–41). In January 2012, Dr. Campbell saw Plaintiff for anxiety - which had improved since her last visit - and a cholesterol check. Plaintiff was feeling well in general (Tr. 16–17, 830–33). The ALJ considered all of this evidence.

The ALJ also noted that in February 2012, Dr. Chasnis, an orthopedist, opined that Plaintiff's December 2010 lumbosacral MRI was negative and better than expected for Plaintiff's age group. There was no significant neurologic compromise, only "revealing a small right L3-4 foraminal protrusion without any significant right L3 axial spinal nerve compression and without correlation to her current symptoms." (Tr. 17, 21, 736). Dr. Chasnis wrote, "I was very frank in telling her that from a structural standpoint her spine looks very good . . . . I cannot clearly look [at] this MRI and identify any pain generators that correlate with her symptoms." (Tr. 17, 736). In March 2012, Ms. Davis, a family nurse practitioner, wrote that Plaintiff's pain level was 2/10, straight-leg-raise testing was negative bilaterally, and "medication ha[d] been helpful to decrease pain to a tolerable level enabling activities of daily living" (Tr. 17, 22, 904–05). In May 2013, Dr. Shah, a pain-management specialist, opined that "[b]ased on the [April 2013] MRI findings, I believe she only has some lumbar facet arthritis. Her MRI is otherwise fairly benign and it is hard to understand why she is having such [a] difficult time in her lower back. She does have multilevel degenerative disc disease, but this appears to be age appropriate" (Tr. 18, 21, 1006). Dr. Shah recommended "conservative treatment such as weight loss," a bariatric consultation, and core-

6

strengthening exercises in physical therapy. (Tr. 1006). The ALJ considered this evidence as well.

Plaintiff challenges the ALJ's evaluation of the opinions from treating physicians Doctors Shah and Goodson and State agency consultant Dr. Coleman. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

The regulations provide that "State agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 404. 1527(e)(2)(i). An ALJ gives weight to State agency opinions based upon such factors as the supportability of the opinion in the evidence including any evidence that was not before the State agency, the consistency of the opinion with the record as a whole, and any explanation for the opinion provided by the State agency consultant. Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *2 (S.S.A. 1996).

Plaintiff alleges error in the ALJ's evaluation of Dr. Coleman's consultative opinion because "the ALJ simultaneously criticizes but relies on" it. Plaintiff's Brief at 5 (document #13). The ALJ stated that the record contains no evidence that any medical provider found Plaintiff disabled or imposed functional limitations consistent with a finding of disability. (Tr. 23). The ALJ

then stated that "just the opposite is the case." He referenced Dr. Coleman's September 2013 opinion, stating "examining physician Dr. Coleman opined that the claimant could sit, stand, and walk for 8 hours a day and that she could lift and carry in excess of 50 pounds" (Tr. 23, 919–24). The ALJ also referenced Dr. Coleman's opinion that Plaintiff's "subjective pain" was "over points which do not correlate to the areas of her reported prior injuries" and that a recent MRI "showed no anatomic cause for her subjective pain and left lower extremity radicular symptoms." (Tr. 19, 921, 930).

The ALJ explained "[a]lthough Dr. Coleman's opinion overestimates the claimant's functional capacity, and it therefore merits only some weight, it is nevertheless an unequivocal opinion that the claimant is not 'disabled.'" (Tr. 23). To the extent the ALJ disregarded Dr. Coleman's opinion, he actually imposed greater, rather than lesser restrictions. The ALJ limited Plaintiff to "light work not requiring climbing of ladders, ropes or scaffolds, and requiring only occasional climbing of ramps or stairs, stooping, kneeling, crouching or crawling." (Tr. 24). Substantial evidence supports the ALJ's treatment of Dr. Coleman's opinion.

The ALJ next cited Dr. Shah's records in support of his determination that Plaintiff was not disabled. Dr. Shah was Plaintiff's treating pain management specialist. The ALJ stated "[a]dditionally, by implication, Dr. Shah opined that he did not consider the claimant to be disabled, as is shown by his records from June 2013. Although his opinion is not in evidence, it is clear from his records that he exercised his best professional medical judgment." (Tr. 24). In a June 2013 treatment note, Dr. Shah wrote:

> In terms of her disability evaluation form [the opinion that is not part of the record], I believe that I have refilled with my best medical decision making capabilities. I expressed to the patient that based on her imaging findings and her current activity levels, I believe that her statements that she can sit only for 15 min. or walk on them for 15 min. at a time are largely inaccurate. When she comes to the office, on certain

8

> days I am running late and frequently she will wait for 30–40 min. interim. She usually does not express any severity of her pain at that time. I have expressed to the patient that she is more than welcome to get a second opinion from another pain physician or another physician in general. She has declined this request and continue[s] to participate in my treatment program.

(Tr. 18, 1011). Following Plaintiff's June 2013 office visit, Dr. Shah wrote "[T]he patient is really here to discuss the recent disability evaluation that I had filled out. She informs me that she felt that the for[m] was filled out unfavorably to her and that she is likely not going to get disability due to my statements." (Tr. 18, 1009).

Since the form was not included in the record, the ALJ gave Dr. Shah's opinion "only very limited weight," stating "since the documentation of the referenced opinion is not in evidence, I can give only very limited weight to the implied general conclusion that Dr. Shah did not consider the claimant to be disabled." (Tr. 24). Even though the disability evaluation form is not in the record, Dr. Shah's treatment note is in the record. Dr. Shah specifically found that "her imaging findings and her current activity levels" rendered her statements as to her limitations "largely inaccurate." (Tr. 18, 1011).

Plaintiff does not identify a medical opinion from Dr. Goodson but argues that his treatment notes amount to an opinion of disability. Plaintiff's Brief at 5–6 (document #13). Plaintiff quotes Dr. Goodson's March 2011 treatment notes that she "is able to arise independently from a seated position. She does use both arms of the chair for push off. No focal muscle weaknesses are noted in the lower extremities. She ambulates independently, with good dynamic balance." Plaintiff's Brief at 5 (document #13) (Tr. 678). This note along with Plaintiff's contemporaneous report to Dr. Goodson that her current medications were effective and that she was independent with mobility and personal activities of daily living support the ALJ's RFC finding. (Tr. 678).

Plaintiff states that Dr. Goodson noted that her gait was "slowed, stiffened and waddling"

9

in May 2011. Plaintiff's Brief at 5-6 (document #13) (Tr. 673). In the preceding sentence of the same treatment record, Dr. Goodson noted that Plaintiff was able to ambulate independently with good dynamic balance. (Tr. 673). When Dr. Goodson saw Plaintiff the following day, he noted that she was independent with mobility and personal activities of daily living, ambulated independently with good dynamic balance, but had a slowed, stiffened, and waddling gait. (Tr. 672). Dr. Goodson noted Plaintiff's report that the injections she had been receiving in the interim were helpful, somewhat helpful, or beneficial. (Tr. 659, 661, 666). Upon examination, Dr. Goodson noted independent ambulation with good dynamic balance and no focal muscle weaknesses but with a slowed, stiffened, and waddling gait. (Tr. 666).

Plaintiff argues that Dr. Goodson's acknowledgement in August 2011 that Dr. Campbell had recommended a functional capacity evaluation supports her claim. Plaintiff's Brief at 6 (document #13), (Tr. 659). At the same time, Dr. Goodson noted that although Plaintiff requested "higher dose pain medications," he "declined the patient's request to increase her medications." Id. Later that month, Dr. Goodson recommended that Plaintiff "[w]alk daily to tolerance." (Tr. 658).

The functional capacity evaluation was also mentioned in a September 2011 note by Ms. Brown, a registered nurse. (Tr. 657). According to Ms. Brown, Plaintiff called the office to say that the rehabilitation facility where Dr. Campbell referred her for a functional capacity evaluation first required a sixteen week physical therapy program. Plaintiff stated she was not continuing with the program because it caused her "severe pain." She also stated that she needed increased or different pain medication, because her present medication was "not helping at all." Id.

In December 2011, Plaintiff reported to Dr. Goodson that her activities of daily living were "severely limited." Plaintiff's Brief at 6 (document #13), (Tr. 641). Dr. Goodson again

recommended that Plaintiff walk daily, and "formally discharged" Plaintiff "secondary to her multiple missed appointments." (Tr. 641).

In short, Plaintiff has not identified any relevant opinion evidence from Dr. Goodson's records that the ALJ failed to consider.

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #12) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #14) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this

Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: July 8, 2016

_____
David S. Cayer
United States Magistrate Judge